IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAININ INSTRUMENT, LLC,

    Plaintiff and Counterdefendant,

v.

GILSON, INC. and GILSON S.A.S,

    Defendants and Counterclaimants.

No. C 05-04030 JSW

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**

Now before the Court is Defendants and Counterclaimants Gilson, Inc. and Gilson S.A.S.'s (collectively, "Gilson") motion to transfer this matter to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404. The Court finds the present motion appropriate for decision without oral argument and hereby VACATES the hearing set for March 17, 2006. *See* Civil L.R. 7-1(b). The Court FURTHER ORDERS that the Case Management Conference currently scheduled for March 17, 2006 is VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Gilson's motion to transfer.

## BACKGROUND

Gilson manufactures a product known as a pipette and has trademarked its product as the Pipetman. Since 1972, Plaintiff Rainin Instrument, LLC ("Rainin") has been the exclusive distributor of the Pipetman in the United States pursuant to an exclusive distribution agreement. (Compl., ¶¶ 14-15.) In 2004, Gilson filed a lawsuit against Rainin and Mettler-Toledo, Inc., the sole member of Rainin, in the Western District of Wisconsin for breach of the distribution

agreement ("first Wisconsin action"). (Affidavit of Teresa Timken ("Timken Affidavit"), Ex. 1.)

During the first Wisconsin action, Rainin's President, Ken Rainin, and Rainin's Vice-President of Engineering, James Petrek, testified both in their depositions and at trial that Rainin engaged in efforts to reverse engineer the Pipetman starting in the mid-1990's. (Timken Affidavit, Exs. C-F to Ex. 1.) According to their testimony, Rainin attempted to develop a product that resembled the Pipetman as closely as possible. (*Id*.) Rainin calls the product it developed the Pipet-Classic. (*Id*.) In a letter produced during discovery in this action, Rainin took the position that in the United States, it was the owner of Pipetman trademark and trade dress. (Second Affidavit of Teresa Timken ("Second Timken Affidavit"), Ex. 1.) No evidence was introduced during this litigation that Rainin had yet mass produced, marketed, or sold the Pipet-Classic. (Timken Affidavit, Ex. 1 at ¶ 25.)

A jury in the first Wisconsin action found that Rainin and Mettler-Toledo materially breached the parties' exclusive distribution agreement by failing to exercise good faith in performing under the agreement. (Second Timken Affidavit, Ex. 10.) On June 7, 2005, the court in the first Wisconsin action entered a judgment that Rainin and Mettler-Toledo's material breach terminated their rights under the agreement. (*Id*., Ex. 11.) The court then granted Gilson's motion for judgment as a matter of law and held that Rainin and Mettler-Toledo breached their obligation to use their best efforts to market and sell Gilson's Pipetman products. (*Id*., Ex. 10.) The court further held that pursuant to the parties distribution agreement, Rainin and Mettler-Toledo had no rights to use the Gilson and Pipetman trademarks in connection with any pipette not manufactured by Gilson. (*Id*., Ex. 10.)

Post-trial, Gilson filed a motion for an amended judgment seeking: (1) a declaration voiding the purchase orders pursuant to the distribution agreement that Rainin submitted during pendency of the action; (2) an order precluding Rainin from using Gilson's trademarks; and (3) an injunction barring Rainin from selling the Pipet-Classic. (Timken Affidavit, Ex. I to Ex. 1.) In opposition to that motion, Rainin represented to the court that it had no intention of manufacturing or selling the Pipet-Classic, a product Rainin intended to be an exact duplicate of

2

the Pipetman, unless and until they were successful in overturning the court's judgment on appeal. Thus, Rainin argued Gilson's request for an injunction to preclude marketing and selling the Pipet-Clasic was not ripe. (Timken Affidavit, Ex. H to Ex. 1.) The trial court denied Gilson's motion to amend the judgment, in part because Gilson was seeking relief that it did not seek prior to the entry of judgment. With respect to Gilson's requests related to the alleged trade dress and trademark infringement, the court further noted that no such claims could have existed prior to the entry of judgment because Rainin and Mettler-Toledo were entitled to use the marks while the exclusive distribution agreement was in place. When the agreement was terminated, Rainin and Mettler-Toledo lost their contractual rights and became "bound by the ordinary restrictions of trademark and unfair competition law." (Timken Affidavit, Ex. I to Ex. 1.)

Rainin subsequently appealed the judgment in the first Wisconsin action to the Seventh Circuit. (Timken Affidavit, Ex. 4.) One month after filing its notice of appeal, on October 5, 2005, Rainin filed the action in this Court, alleging that Gilson breached the purchase order contracts it submitted during the pendency of the Wisconsin action. (Compl., ¶¶ 32-35.) Rainin asserts claims for breach of contract and tortious interference with contractual relations. (Compl., ¶¶ 40-55.) Rainin also alleges in this action that has been responsible for advertising and marketing the Pipetman products in the United States since 1972 and owns the trade dress rights for such Pipetman products. (Compl., ¶ 23.) Rainin asserts claims pursuant to the Lanham Act and for unfair competition based on Gilson's alleged infringement of the asserted trade dress. (Compl., ¶¶ 57-69.)

On December 9, 2006, Gilson filed an answer and asserted a counterclaim for breach of the Pipetman trade dress against Rainin in the action in this Court. (Docket No. 11.) In its answer, Gilson alleges that Rainin's material breaches found in the first Wisconsin action terminated the purchase agreements. (*Id*., ¶ 34 and Affirmative Defenses Nos. 3 and 4; *see also* Second Declaration of Daniel J. Maffet, Ex. A (June 10, 2005 letter informing Rainin that Gilson considers the pending purchase orders to fall within the ambit of distribution contract terminated by the Wisconsin court). Gilson further alleges that after the Wisconsin trial court

3

denied Gilson's motion for an order terminating the pending purchase orders, Gilson offered to ship the Pipetman products under the purchase orders but Rainin refused. (Docket No. 11, ¶ 35.)

On December 19, 2005, Gilson discovered that Rainin had been marketing and selling its Pipet-Classic. (Second Declaration of Daniel J. Maffet, ¶ 3.) On January 27, 2006, Gilson filed a complaint in the Western District of Wisconsin ("second Wisconsin action") against Rainin and Mettler-Toledo, Inc. for trade dress infringement and unfair competition under the Lanham Act and Wisconsin state law, as well as for tortious interference with economic relations. (Timken Affidavit, Ex. 1.) The lawsuit filed in 2006 has been assigned to the same judge who heard the first Wisconsin action. (Mot. at 6.) In the answer filed by Rainin and Mettler-Toledo in second Wisconsin action, they allege that Rainin owns the Pipetman trade dress. (Second Timken Affidavit, Ex. 3.) In the second Wisconsin action, Rainin and Mettler-Toledo assert as counterclaims the same claims Rainin brings against Gilson in the action in this Court. (*Id.*)

Rainin is a company incorporated in Delaware and has its principal place of business in Oakland, California. (Compl., ¶ 1.) Rainin also has an office in Massachusetts. (Timken Affidavit, Ex. 2.) Rainin's current and former sales representatives are located in Massachusetts, California, and elsewhere around the country, and Rainin's Vice President for Sales, Richard Wallner, is a resident of Massachusetts. (Declaration of Allen A. Arnsten, ¶¶ 5, 9; Declaration of Henri Chahine, ¶ 13.) The Chief Operating Officer of Rainin, Henri Chahine, works in Rainin's office in Oakland, California. (Declaration of Henri Chahine, ¶¶ 1, 2.) Rainin has one member, Mettler-Toledo, which is incorporated in Delaware and has its principal place of business in Ohio. (Compl., ¶ 1.)

Gilson, Inc. is both incorporated and has its principal place of business in Wisconsin. (*Id.*, ¶ 2.) Gilson, Inc.'s only office is in Middleton, Wisconsin, and all the employees responsible for the company's marketing and sales programs for the Pipetman products in the United States and for Gilson's relationship with Gilson S.A.S. reside in Wisconsin.

4

(Declaration of Daniel J. Maffet, ¶¶ 2-3.)  Gilson S.A.S, a wholly owned subsidiary of Gilson, Inc., is a French corporation with its principal place of business in France.  (Compl., ¶ 3.)

## ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district where the case could have been filed originally for the convenience of the parties and witnesses and in the interest of justice.  A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors to determine whether transfer is appropriate in a particular case.  For example, the court may consider: (1) the plaintiff's choice of forum; (2) the convenience of witnesses and the parties; (3) the familiarity of the forum with the applicable law; (4) the ease of access to evidence; and (5) the relative court congestion and time of trial in each forum.  *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  As the moving party, Defendant bears the burden of showing that the inconvenience of litigating in this forum favors transfer.  *See E. & J. Gallo Winery v. F. & P.S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994).  If the balance of convenience weighs strongly in favor of transfer, the Court may accord less deference to a plaintiff's chosen forum.  *See id.*

The parties do not dispute that Rainin could have sued Gilson in Wisconsin. Accordingly, the Court must determine whether the convenience of the parties and the interests of justice warrants or prohibits transfer under the circumstances.

### 1.     Interests of Justice

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate."  *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, * 4 (N.D. Cal. Oct. 14, 2003); *see also Hoefer v. Department of Commerce*, 2000 WL 890862, * 3 (N.D. Cal. June 28, 2000) (finding fact that another lawsuit similar to the case at issue was initiated previously in another district was compelling factor in

favor of transfer). In *Hoefer*, the court transferred the matter, reasoning that where a similar action was filed in federal court in the District of Columbia, allowing the case to remain in Northern District of California would "entail a significant waste of time and energy and would involve duplicate effort by [the] court." *Hoefer*, 2000 WL 890862, at *3.

The Court finds that court in the Western District of Wisconsin is intimately familiar with the issues and evidence central to this case and the two matters filed in Wisconsin. Evidence relating the parties' respective claims to the trademarks and trade dress at issue in the matter before this Court and in the second Wisconsin action was introduced in the first Wisconsin action, and the Wisconsin court has already considered the legal implications of such evidence. (Second Timken Affidavit, Exs. 1, 10.) Although two of the claims in the matter in this Court relate to purchase orders not specifically at issue in the first Wisconsin action, Gilson contends that Rainin's breach of the exclusive distribution agreement at issue in the first Wisconsin action also constitutes a material breach of the purchase orders. (Docket No. 11.) Thus, the evidence and issues underlying the first Wisconsin action are relevant to these claims as well. Accordingly, the Court finds that the interests of justice and conservation of resources of both the judicial system and the parties would be strongly served by transferring this matter to Wisconsin.

**2.  Convenience of the Parties and Witnesses**

Among the factors relevant to the convenience of the parties and witnesses, courts consider the following factors: (1) the plaintiff's choice of forum; (2) the convenience of witnesses and the parties; (3) the familiarity of the forum with the applicable law; (4) the ease of access to evidence; and (5) the relative court congestion and time of trial in each forum. *Gulf Oil*, 330 U.S. at 508-09; *Jones*, 211 F.3d at 498-99.

Ordinarily a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, *43 (9th Cir. 1986). Nevertheless, the deference accorded to a plaintiff's chosen forum should be balanced against both the extent of a defendant's contacts with the chosen forum and a plaintiff's contacts, including those relating to a plaintiff's cause of action. *Pacific*

6

*Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Here, Rainin, as resident of California, has substantial contacts with its chosen forum. Moreover, several witnesses and documents relevant to Rainin's breach of contract claims are located in California. However, Gilson's witnesses and documents are located primarily in Wisconsin.

Rainin also argues that the forum selection clauses in the purchase orders preclude transfer. However, a forum selection clause is not dispositive, but rather, is just one of the multiple factors considered by courts on motions to transfer. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). Moreover, the forum selection clause is only relevant to one of the claims in the matter before this Court.

The Court finds that the factors regarding the relative ease of access to sources of proof, the availability of the compulsory process for unwilling witnesses and the cost of securing willing witnesses, and local interest in the issue do not tip the scales either way. Witnesses and evidence are located in California, Wisconsin, Massachusetts, and France. While Massachusetts and France are closer to Wisconsin than to California, the difference is not so great as to warrant transferring the matter to Wisconsin based on this factor alone.

Finally, the docket in the Western District of Wisconsin is significantly less congested than this Court. (Mot. at 9-10, *citing* statistics from http://www.uscourts.gov/cgi-bin/cmsd2004.pl.) Less than half the number of cases are pending before judges in the Western District of Wisconsin than in the Northern District of California, and the average case in the Western District of Wisconsin proceeds to trial in less than half the time than the average case in the Northern District of California. (*Id.*) The fact that it is likely that the parties' litigation would be resolved in substantially less time if it proceeded in Wisconsin favors transfer. *See Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1167 (S.D. Cal. 2005).

## CONCLUSION

The Court finds that the interests of justice and conservation of resources, and the fact that this case would likely be resolved in significantly less time if it proceeded in Wisconsin, strongly favors transfer and thus warrants upsetting the Rainin's choice of forum. Accordingly, the Court GRANTS Gilson's motion to transfer and ORDERS the case transferred to the United

7

States District Court for the Western District of Wisconsin.  The Clerk is directed to transfer this case, forthwith.

**IT IS SO ORDERED.**

Dated: March 15, 2006

                                            JEFFREY S. WHITE
                                            UNITED STATES DISTRICT JUDGE